**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JERMAINE H. HUDSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3650** |
| **BURL CAIN** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I. Factual Background

The petitioner, Jermaine H. Hudson ("Hudson"), is an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On July 1, 1999, Hudson was charged by bill of information in Orleans Parish with armed robbery and as a felon in possession of a weapon.[3]

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 4, Bill of Information, 7/1/99.

The record reflects that, on March 1, 1999, at around 10:45 p.m., Robert Gumpright was riding his bicycle home from work near the corner of Hyman and McArthur Boulevard.[4] At some point, Hudson stepped off the curb in front of him and asked Gumpright what time the bus stopped running. Gumpright stopped his bike and looked at his watch. When he looked up to answer Hudson's question, he saw a gun pointing at his face. Hudson yanked Gumpright's St. Christopher medal and chain from his neck. Hudson then ordered Gumpright to empty his pockets and lie face down in the street, which he did. Gumpright then heard Hudson rifle through his backpack before running away.

Gumpright called the police and gave a description of the perpetrator to police. Later, on May 5, 1999, Gumpright was presented a photographic lineup from which he immediately identified Hudson.

Hudson was tried for armed robbery before a jury on March 22, 2000, and he was found guilty.[5] The State eventually entered a nolle prosequi on the count charging him as a felon in possession of a weapon.[6]

At a hearing held, April 12, 2000, the Trial Court denied Hudson's motions for new trial and for post-verdict judgment of acquittal.[7] After waiver of legal delays, the Trial Court then sentenced

---

[4] The facts of the case were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Hudson*, 796 So. 2d 938 (La. Ct. App. 2001) (Table); St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2000-KA-1757, p. 2, 5/23/01.

[5] St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 3/22/00; St. Rec. Vol. 2 of 4, Trial Transcript, 3/22/00.

[6] St. Rec. Vol. 1 of 4, Minute Entry, 3/24/00.

[7] St. Rec. Vol. 1 of 4, Minute Entry, 4/12/00; Motion for New Trial, 4/12/00; Motion for Post-Verdict Judgment of Acquittal, 4/12/00; St. Rec. Vol. 2 of 4, Sentencing Transcript, 4/12/00.

Hudson to serve 99 years in prison, without benefit of parole, probation or suspension of sentence.[8] The Court also denied Hudson's motion to reconsider the sentence.[9]

On March 14, 2000, the Trial Court held a hearing at which it determined Hudson to be a multiple offender.[10] The Trial Court resentenced Hudson as a multiple offender, although the terms of his sentence did not change.

On direct appeal, Hudson's appellate counsel raised three grounds for relief:[11] (1) trial counsel erred when he refused to call two witnesses subpoenaed to trial; (2) the State did not prove guilt beyond a reasonable doubt where the identification by the victim was not reliable; and (3) the sentence was excessive. The Louisiana Fourth Circuit affirmed the conviction and sentence on May 23, 2001, finding no merit to the claims.[12] His application for rehearing was refused on November 5, 2001.[13]

In the meantime, on June 20, 2001, Hudson timely[14] submitted a writ application which was filed with the Louisiana Supreme Court on July 3, 2001.[15] The Court denied the application without

---

[8]St. Rec. Vol. 1 of 4, Minute Entry, 4/12/00.

[9]St. Rec. Vol. 1 of 4, Minute Entry, 4/12/00; Motion to Reconsider Sentence, 4/12/00; St. Rec. Vol. 2 of 4, Sentencing Transcript, 4/12/00.

[10]St. Rec. Vol. 1 of 4, Minute Entry, 4/14/00; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 4/14/00.

[11]St. Rec. Vol. 2 of 4, Appeal Brief, 2000-KA-1757, 9/5/00; 4th Cir. Opinion, 2000-KA-1757, 5/23/01.

[12]*Hudson*, 796 So. 2d at 938; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2000-KA-1757, 5/23/01.

[13]St. Rec. Vol. 2 of 4, Application for Rehearing, 8/14/01; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2000-KA-1757, p. 10, 5/23/01.

[14]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. Hudson's writ application was postmarked on June 20, 2001, which was within the proscribed period.

[15]St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2001-KO-1959, 7/3/01. The record does not contain a copy of the writ application in spite of the State's representation that the copy could be found in volume four. *See* Rec. Doc. No. 10, p.2.

reasons on May 31, 2002.[16] Hudson's conviction became final 90 days later, on July 1, 2002,[17] because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

## II. Procedural History

Over eight months later, on March 18, 2003, Hudson submitted an Uniform Application for Post-Conviction Relief to the Trial Court raising four grounds for relief:[18] (1) the Court failed to establish probable cause to try him; (2) insufficient evidence to support the conviction; (3) ineffective assistance of counsel where counsel failed to investigate the victim's motive for accusing him and for allowing a false impressions to be created at trial; and (4) unstable testimony and identification led to the State's inability to prove each element of the crime charged.

On March 17, 2004, Hudson sent a letter to the Trial Court inquiring about the status of his post-conviction application.[19] He also filed a motion to set his application for hearing.[20] After receiving no response, Hudson filed a request for mandamus with the Louisiana Fourth Circuit on

---

[16] *State v. Hudson*, 817 So. 2d 87 (La. 2002); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2001-KO-1959, 5/31/02.

[17] The period actually ended on Sunday, June 30, 2002. However, pursuant to La. Code Crim. P. 13, a Sunday could not be the last day of the period.

[18] St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, signed 3/18/03.

[19] St. Rec. Vol. 1 of 4, Letter to Court, 3/17/04.

[20] St. Rec. Vol. 1of 4, Motion to Set for Hearing, 4/1/04.

4

May 25, 2004, to have the state trial court rule on his post-conviction claims.[21] The Court granted the writ application on June 29, 2004, and ordered the Trial Court to enter its ruling within 60 days.[22]

In response to that order, on July 23, 2004, the Trial Court denied Hudson's request for a hearing and denied the application for post-conviction relief finding no merit to the claims raised.[23] The Court indicated that a copy of its minute entry was sent to Hudson and the Louisiana Fourth Circuit.

Over one year later, on August 15, 2005, Hudson submitted a writ application to the Louisiana Fourth Circuit seeking enforcement of the Court's prior order directing the Trial Court to rule on the application for post-conviction relief.[24] The Court denied the application noting that it had received proof of the Trial Court's compliance on August 9, 2004, and indicating that the Trial Court denied Hudson's application for post-conviction relief on July 23, 2004.[25]

Over three months later, on April 6, 2006, Hudson filed a writ application with the Louisiana Supreme Court.[26] In that application, he argued that his writ application was denied by the Louisiana Fourth Circuit as untimely filed. While this was not true, he further argued that he did not receive notice of the Trial Court's ruling and his failure to pursue timely relief in the Louisiana Fourth should have been forgiven based on the mailbox rule announced in *Hudson v. Lack*, 487 U.S. 266 (1988). As relief, he requested that the Louisiana Supreme Court order the Louisiana Fourth

---

[21]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2004-K-0866, 5/25/04.

[22]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2004-K-0866, 6/29/04.

[23]St. Rec. Vol. 1 of 4, Minute Entry (1), 7/23/04; Minute Entry (2), 7/23/04.

[24]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2005-K-1369, 8/22/05 (dated 8/15/2005).

[25]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2005-K-1369, 12/20/05.

[26]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 06-KH-0775, 4/6/06.

5

Circuit to show cause why his prior writ application should not be considered as timely filed. The Court denied the application as moot on October 6, 2006, stating that "the Court of Appeal and Criminal District Court have acted."[27]

### III. Federal Petition

On July 5, 2007, the Clerk of Court filed Hudson's petition for federal habeas corpus relief, in which he raised four grounds for relief:[28] (1) the Court failed to establish probable cause to try him; (2) insufficient evidence to support the conviction; (3) ineffective assistance of counsel where counsel failed to investigate the victim's motive for accusing him and for allowing a false impressions to be created at trial; and (4) unstable testimony and identification led to the State's inability to prove each element of the crime charged.

The State filed a response in opposition to Hudson's petition arguing that the federal petition was untimely filed and that at least his first claim had not been exhausted through the state courts.[29] Hudson filed a traverse to the State's response insisting that his petition was timely filed.[30]

### IV. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[31] applies to this petition, which is deemed filed in this Court under the federal

---

[27]*State ex rel. Hudson v. State*, 938 So. 2d 70 (La. 2006); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2006-KH-0775, 10/6/06.

[28]Rec. Doc. No. 1.

[29]Rec. Doc. No. 8.

[30]Rec. Doc. No. 10.

[31]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on June 19, 2007.[32] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State argues that Hudson's petition was not timely filed and that he has not completed exhaustion. The Court finds that the limitations defense is dispositive of Hudson's petition for the reasons set forth below.

## V.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[33] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Hudson's conviction

---

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Hudson's petition on July 5, 2007, when the filing fee was paid. Hudson's signature on the petition is dated June 19, 2007. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[33]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral

is deemed final on July 1, 2002, which was 90 days after the Louisiana Supreme Court ruled on his writ application following direct appeal. Under the plain language of § 2244, Hudson had until July 1, 2003, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Hudson's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes "'until further appellate review

---

review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

is unavailable under [Louisiana's] procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Hudson's AEDPA filing period began to run on July 2, 2002, the day after his conviction was final. The filing period ran for 259 days, until March 18, 2003, when he submitted the application for post-conviction relief to the Trial Court for filing. The application remained pending until August 23, 2004, which was 30 days after it was denied by the Trial Court and Hudson did not seek timely review in the Louisiana Fourth Circuit.[34]

The AEDPA filing period began to run again on August 24, 2004, and did so for the remaining 106 days when it expired on December 8, 2004. Hudson had no other properly filed state post-conviction or other collateral review pending during that time period.

---

[34]That time period actually ended on Sunday, August 22, 2004.

In his traverse to the State's opposition,[35] Hudson argues that he should not be penalized for the time period after the Trial Court's ruling because he may not have received a copy of the ruling in the mail. He also alleges that his 2006 Louisiana Supreme Court writ application tolled the running of time against him and that his federal petition was filed within one year after that court's ruling.

The writ applications filed in the Louisiana Fourth Circuit in 2005 and the one filed in the Louisiana Supreme Court in 2006 do not impact this calculation or provide tolling benefits because they both were filed after the AEDPA filing period expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). By its plain language, § 2244(d)(2) does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. *Flanagan*, 154 F.3d at 199 n.1. The fact that Hudson filed his federal petition within one-year of the Louisiana Supreme Court's ruling makes no difference here.

Furthermore, the 2006 Louisiana Supreme Court writ application was filed more than 30 days after the last ruling by the Louisiana Fourth Circuit. As noted previously, La. S.Ct. R. X§5 provides that an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-19 (2008). For this additional reason, the 2006 writ application would not have provided Hudson with any tolling benefit.

---

[35]Rec. Doc. No. 12.

The Court also recognizes that Hudson argued to the Louisiana Supreme Court that he was denied review of the Trial Court's ruling on his application for post-conviction relief because his writ application to the Louisiana Fourth Circuit was denied as untimely. The record reflects that Hudson never sought review of the Trial Court's ruling in the Louisiana Fourth Circuit. Instead, almost one year after the ruling, he filed an application for writ of mandamus seeking an order to compel the Trial Court to rule. The Louisiana Fourth Circuit denied the writ application because the Trial Court had already ruled. There was no ruling on timeliness per se.

Nevertheless, to the extent a reviewing Court may consider Hudson's argument as one seeking equitable tolling, Hudson has not provided, and the record does not demonstrate, any basis for extending that extraordinary remedy to this case. The post-AEDPA jurisprudence provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Hudson has not made this type of showing here, where he waited over one year to question whether the Trial Court complied with the appellate court's order.

Furthermore, even if a reviewing Court were to afford some equitable tolling in connection with the three years Hudson pursued his state post-conviction claims, his federal petition still would not be timely. As calculated above, Hudson allowed 259 days to lapse between finality of his

conviction and the submission of his state application for post-conviction relief. He also allowed another 255 days to lapse between the Louisiana Supreme Court's denial of his last writ application on October 6, 2006, and the submission of his federal petition on June 19, 2007. These two periods alone account for well over one year of lapsed time without the pendency of any properly filed state application for post-conviction or other collateral review. Thus, giving Hudson tolling credit for the entire period of time from March 13, 2003, when he submitted the application for post-conviction relief through October 6, 2006, when the Louisiana Supreme Court denied his writ application, the remaining 106 days of the AEDPA filing period would have expired by January 22, 2007.[36] This was six months before Hudson submitted the instant federal petition for filing. Under any combination of the un-tolled time periods outlined in this report, Hudson's federal petition is untimely.

Hudson's federal petition is deemed filed on June 19, 2007, which is over two and one-half years after the AEDPA filing period expired on December 8, 2004. Hudson's federal petition must be dismissed as untimely.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jermaine H. Hudson's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[36]The period would actually have ended on Saturday, January 20, 2007.

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 14th day of September, 2009.

                                      **KAREN WELLS ROBY**
                                **UNITED STATES MAGISTRATE JUDGE**